# 23-13132-E

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

DAVID GIBSON,
Defendant-Appellant.

---

On Appeal from the United States District Court
For the Middle District of Georgia, Columbus Division
District Court Docket No. 4:22-cr-00032-CDL-MSH-1

---

## BRIEF OF APPELLANT, DAVID GIBSON

---

Jennifer A. Curry
Attorney for Defendant-Appellant

Law Office of Jennifer A. Curry, LLC
Post Office Box 1275
Columbus, Georgia 31902
706.257.1592
cmecf@jacurrylaw.com
jennifer@jacurrylaw.com

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-5, undersigned counsel certifies that the following persons have, or may have had, an interest in the outcome of this case:

A. Gibson, David – Defendant-Appellant

B. Gibson, Melanie – Claimant, pro se

C. Curry, Jennifer – Attorney for Defendant-Appellant

D. Hyles, Honorable Stephen – U.S. Magistrate Judge, Middle District of Georgia, Columbus Division

E. Land, Honorable Clay D. – District Judge of the United States District Court for the Middle District of Georgia, Columbus Division

F. Leary, Peter D. – acting United States Attorney

G. Helmick, Amelia – Assistant United States Attorney, Middle District of Georgia

H. Williams, Christopher –Assistant United States Attorney, Middle District of Georgia

I. Lee, Jessica – former Attorney for Defendant-Appellant

J. Simpkins, Michael – former Attorney for Defendant-Appellant

K. Schieber, Mikki – Assistant United States Attorney, Appellate Division

C1

No publicly traded company or corporation has an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests that this case be placed on the calendar for oral argument.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT............................................................................ C

STATEMENT REGARDING ORAL ARGUMENT .................................................. i

TABLE OF CONTENTS ............................................................................. ii

TABLE OF AUTHORITIES............................................................................ iv

STATEMENT OF JURISDICTION AND STANDARD OF REVIEW.................. 1

STATEMENT OF THE ISSUES ...................................................................... 1

   1.   WHETHER THE DISTRICT COURT PLAINLY ERRED IN ITS
   INTERPRETATION OF 18 U.S.C. § 922(g)(3) ........................................... 1

   2.   DEFENDANT'S PLEA OF GUILTY WAS INVOLUNTARY IN
   VIOLATION OF RULE 11 AND THE DUE PROCESS CLAUSE BECAUSE
   THE DISTRICT COURT INACCURATELY EXPLAINED THE DRUG USER
   STATUS AND REHAIF KNOWLEDGE ELEMENTS........................................ 1

STATEMENT OF THE CASE ......................................................................... 1

   A.   Course of Proceedings and Disposition in the Court Below ...................... 1

   B.   Statement of Facts........................................................................ 5

     i.   The Investigation of David Gibson ............................................. 5

     ii.   The Superseding Indictment for Charges of Possession of a Firearm by
   an Unlawful Drug User ................................................................ 6

     iii.   The Presentence Investigation Report......................................... 7

     iv.   Gibson's Sentencing Memorandum With Requests for Variance ......... 7

ARGUMENT AND CITATIONS OF AUTHORITY ............................................. 7

   A.   Interpretation of 18 U.S.C. § 922(g)(3)......................................... 7

   B.   In *New York State Rifle & Pistol Ass'n, Inc. V. Bruen,* __U.S.__, 142
   S.Ct. 2111 (2022), The Supreme Court Established A Test For Whether A Law
   Violates The Second Amendment: If The Text Of The Amendment Covers
   The Proscribed Conduct, The Government Must Show It Is Consistent With
   Distinctly Similar Laws Or Regulations That Were Commonplace Around The
   Time The Second Amendment Was Adopted. Under This Framework, 18
   U.S.C. § 922(G)(3) Is Facially Unconstitutional And Gibson's Conviction
   Cannot Stand........................................................................... 10

i.   The Plain Text of the Second Amendment Covers the Possession of Firearms By Drug Users. ...............................................................................11

ii.   *Bruen* Abrogated *United States v. Rozier*, 598 F.3d 769, 770-71 (11th Cir. 2010). ...................................................................................................13

iii.   Gibson Did Not Waive His Second Amendment Claim By Pleading Guilty to Violating 18 U.S.C. § 922(g)(3). ......................................................16

C.   Rule 11 Colloquy Pertaining to the Factual Basis for the Guilty Plea.... 17

D.   Due Process Violation ........................................................................20

E.   Gibson's Plea Was Involuntary as the *Rehaif* Elements Were Not Explained by the Court Nor Counsel ...........................................................27

SUMMARY OF ARGUMENT.........................................................................29

CONCLUSION ..............................................................................................36

CERTIFICATE OF COMPLIANCE ...............................................................37

CERTIFICATE OF SERVICE.........................................................................38

iii

## TABLE OF AUTHORITIES

**Cases**

*Begay v. United States*, 553 U.S. 137 (2008).................................................. 15, 16

*Blackledge v. Perry*, 417 U.S. 21, 30 (1974) ............................................................. 17

*Bousley v. United States*, 523 U.S. 614 (1998) ......................................................... 27

*Boykin v. Alabama*, 395 U.S. 238, 239, 244 (1969)............................... 19, 21, 22, 28

*Class v. United States*, __U.S.__, 138 S.Ct. 798, 802 (2018)........................... 16, 17

*District of Columbia v. Heller*, 554 U.S. 570, 580-81 (2008) ..................... 12, 13, 15

*Faretta v. California*, 422 U.S. 806, 834 (1975)....................................................... 26

*Gaddy v. Linahan*, 780 F.2d 935, 943 (11th Cir. 1986)............................................ 21

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1324

    (11th Cir. 2015)................................................................................................. 14, 15

*Gideon v. Wainwright*, 372 U.S. 335, 343-345 (1963) ............................................. 27

*Henderson v. Morgan*, 427 U.S. 637 (1976)................................... 19, 20, 22, 23, 28

*Illinois v. Allen*, 397 U.S. 337, 350-351 (1970) ...................................................... 26

*Kanter v. Barr*, 919 F.3d 437, 441 (CA7 2019)....................................................... 15

*McCoy v. Louisiana*, __U.S.__, 138 S.Ct. 1500, 1508 (2018)........................... 19, 25

*McKaskle v. Wiggins*, 465 U.S. 168, 177, n.8 (1984) ................................... 19, 25, 28

*Menna v. New York*, 423 U.S. 61, 63 (1975).............................................................. 17

*Mitchell v. United States*, 526 U.S. 314, 324 (1999) ................................................ 17

iv

*New York State Rifle & Pistol Ass'n, Inc. V. Bruen*, __U.S.__, 142 S.Ct. 2111 (2022) ........................................................................... 10, 11, 13, 14, 15, 16

*Rehaif v. United States*, ___ U.S. ___, 139 S.Ct. 2191 (2019) ........................... 27, 28

*Roe v. Flores-Ortega*, 428 U.S. 470 (2000) ................................................ 25

*Rosales-Mireles v. United States*, ___ U.S. ___, 138 S.Ct. 1897 (2018) ................ 29

*Silvester v. Becerra*, _U.S._, 138 S.Ct. 945, 947 (2018) ................................ 14

*Smith v. O'Grady*, 312 U.S. 329, 334 (1941) .............................................. 20

*State v. Mercier*, 349 GA App 536 (2019) ................................................. 3

*Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) ......................................... 27

*United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ................. 14, 15, 16

*United States v. Bennett*, 329 F.3d 769, 778 (10th Cir. 2003) ........................... 9

*United States v. Bernardine*, 73 F.3d 1078 (11th Cir. 1996) ........................... 9, 10

*United States v. Daniels*, 22-60596 (Aug 9, 2023) ....................................... 8

*United States v. Dominguez Benitez*, 542 U.S. 74, 84 n.10 (2004) ............. 19, 23, 28

*United States v. Edmonds*, 348 F.3d 950 (11th Cir. 2003) ................................ 10

*United States v. Edwards*, 38 F. App'x 134, 138 (4th Cir. 2002) ......................... 9

*United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017) .......................... 14

*United States v. Gilbert*, 138 F.3d 1371 (1998) ...................................... 15, 16

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) ................................... 25

*United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002) ............................ 9

*United States v. James*, 210 F.3d 1342, 1345 (11th Cir. 2000) ...............................20

*United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022)..................12

*United States v. Jones*, 266 F. App'x 901, 902 (11th Cir. Feb. 26, 2008)..............23

*United States v. Lopez*, 907 F.2d 1096, 1100 (11th Cir. 1990)...............................18

*United States v. Meza-Rodriguez*, 798 F.3d 664, 672 (7th Cir. 2015)....................12

*United States v. Olano*, 507 U.S. 725, 736 (1993).................................................29

*United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018) .................18, 20

*United States v. Purdy*, 264 F.3d 809, (9th Cir. 2001)...............................................9

*United States v. Rozier*, 598 F.3d 769, 770-71 (11th Cir. 2010)...........13, 14, 15, 16

*United States v. Sperling*, 400 F. App'x 765, 767 n.3 (4th Cir. 2010)......................9

*Weaver v. Massachusetts*, __U.S.__, 137 S.Ct. 1899, 1907 (2017)......24, 25, 26, 28

**Statutes**

18 U.S.C. § 3231 ........................................................................................................1

18 U.S.C. § 3742(a)(2) ..............................................................................................1

18 U.S.C. § 922(g)(1).................................................................................................27

18 U.S.C. § 922(g)(3)...............................1, 4, 7, 8, 9, 10, 11, 14, 16, 17, 18, 21, 27

18 U.S.C. § 924(a)(2) ...........................................................................................27, 30

18 U.S.C. § 924(a)(8) ...............................................................................................21

21 U.S.C. § 802 ............................................................................27, 29, 30, 33, 34

28 U.S.C. § 1291 ........................................................................................................1

40 U.S.C. § 5104(e)(1) ................................................................. 16

O.C.G.A. § 16-13-5(b) .................................................................. 3

O.C.G.A. § 40-6-391 ................................................................... 35

**Other Authorities**

Noah Webster, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828) .. 11

Thomas Dyche & William Pardon, A NEW GENERAL ENGLISH DICTIONARY (14th

ed. 1771) ................................................................................. 11

**Rules**

Rule 11 .......................................................................... 17, 18, 19, 20

U.S.S.G. §4B1.2 ........................................................................ 15

## STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

This is a direct appeal from a judgment imposed in a criminal case. The Defendant-Appellant filed a Notice of Appeal on September 15, 2023. The District Court exercised jurisdiction pursuant to Title 18 U.S.C. § 3231. This Court has jurisdiction pursuant to Title 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2). Constitutional challenges and questions of statutory construction are reviewed de novo.

## STATEMENT OF THE ISSUES

1.  WHETHER THE DISTRICT COURT PLAINLY ERRED IN ITS INTERPRETATION OF 18 U.S.C. § 922(g)(3)

2.  DEFENDANT'S PLEA OF GUILTY WAS INVOLUNTARY IN VIOLATION OF RULE 11 AND THE DUE PROCESS CLAUSE BECAUSE THE DISTRICT COURT INACCURATELY EXPLAINED THE DRUG USER STATUS AND REHAIF KNOWLEDGE ELEMENTS

## STATEMENT OF THE CASE

Defendant-Appellant David Gibson ("Gibson"), appeals the District Court's interpretation, judgment and sentence as to 18 U.S.C. § 922(g)(3).

### A.    Course of Proceedings and Disposition in the Court Below

On November 17, 2022, Gibson was arrested. On November 18, 2022, a criminal complaint 4:22-mj-179-MSH and an arrest warrant was signed. [R2, R5]. The Federal Defender was appointed and waived the detention hearing.

1

On or about December 15, 2022, Gibson was indicted by a Federal Grand Jury on the charge of Possession of a Firearm by a Prohibited Person. [R8]. The Government then filed a Motion Seeking Detention on December 19, 2022. [R11]. On December 21, 2022, a second arrest warrant was signed in case number 4:22-cr-00032-001. [R15]. A second initial appearance was conducted on December 21, 2022. A plea of not guilty was entered and Gibson, represented by the Federal Defender's Office, consented to detention.

Gibson retained undersigned counsel on or about January 21, 2023.

On February 15, 2023, Gibson was reindicted by a Federal Grand Jury on the charge of Possession of a Firearm by a Prohibited Person. [R36]. Gibson entered his plea of not guilty and the Court scheduled a pretrial conference.

On February 22, 2023, Gibson filed his first motion to suppress. [R38]. Also filed was a motion to review detention. [R39].

On February 23, 2023, Magistrate Judge Stephen Hyles heard Gibson's suppression argument. This was based on the Government's unwillingness to disclose the identity of any confidential informants who were the sole basis for the search warrant executed at Gibson's home, resulting in his arrest. The Government was given until March 9, 2023, to decide whether or not it would disclose the identity of any such witnesses and Gibson's motion would then be decided. Gibson's motion for release was denied.

2

On March 9, 2023, District Court Judge Clay Land heard Gibson's motion to suppress. The Court ruled that the Government was not required to disclose any of the confidential informants and the motion was denied. A written order was not issued.

Pretrial motions were heard on the morning of March 22, 2023, in chambers, as Judge Land was in the middle of a civil trial at the same time. The court ruled that, although law enforcement testified that Gibson appeared to be under the influence of an illegal substance at the time his statement was given, that the court felt Gibson seemed to be "sufficiently coherent." [T2, pp 18, 29].

Gibson's next motion sought to exclude a traffic stop conducted in 2019. The Government intended to use that traffic stop to prove that Gibson was a drug user at the time of his arrest in 2022. The court denied Gibson's motion to exclude. [T2, p 37].

Gibson also sought to exclude testimony from an emergency worker who performed life-saving measures on Gibson. Counsel argued the Georgia medical amnesty law O.C.G.A. § 16-13-5(b), *State v. Mercier*, 349 GA App 536 (2019). The court reserved ruling until the next morning, at which time Gibson's motion was denied. [T3, p 4-5].

Gibson also sought to exclude the 2019 traffic stop case as not being a prior conviction as Gibson was sentenced under the conditional discharge provision. The

3

court ruled that since Gibson entered a guilty plea to that charge, it could be used against him as an admission to being a person in possession of methamphetamine. Counsel's argument was that the indictment requires that the Government prove Gibson to be a drug *user*, not a drug *possessor*. The court disagreed, denying Gibson's motion. [T2, p 43].

Jury section took place on March 22, 2023. The following date, the case was set for opening statements. Before the jurors entered the courtroom, many other issues arose and the court made additional rulings to include allowing testimony that Gibson was a drug dealer. [T3, p 7-8]. As jurors were entering the courtroom, the District Court sought clarification from the Government as to the required elements to secure a conviction under the charged offense. [T3, pp. 9-11]. Defense Counsel then moved to hold the jury, allowing time for her to have a colloquy with Gibson in light of the Court's interpretation of the charged statute. [T3, p 11].

Gibson was advised by counsel at that time that the likelihood of success at trial, in light of what would now by the jury charge on 18 U.S.C. § 922(g)(3), had been significantly decreased. Counsel advised Gibson to enter a change of plea with the intention of then appealing the District Court's interpretation of the statute.

On March 23, 2023, Gibson reluctantly entered a plea of guilty, without a written agreement, on the advice of counsel. [T3, p 12].

The Court asked the Government to explain what it would have to prove at trial in order to secure a conviction. The Court then asked Gibson if he understood to which he replied, "No, sir, I don't." [T3, p. 16]. The plea of guilty was ultimately accepted by the Court.

Counsel then filed a motion to withdraw guilty plea on May 25, 2023, seeking to appeal the court's pretrial rulings. [R64]. Said motion was denied without a hearing on August 8, 2023. A written order was filed on August 24, 2023. [R75].

A sentencing hearing took place on September 6, 2023. Gibson was sentenced to a term of imprisonment of 30 months with a $100.00 mandatory assessment. Judgment was entered on September 7, 2023 [R79] along with a Statement of Reasons [R80]. Gibson filed his Notice of Appeal on September 15, 2023 [R81]. Gibson is currently incarcerated at USP Atlanta.

**B.      Statement of Facts**

**i.      The Investigation of David Gibson**

In Talbot County, Talbotton, Georgia, several females overdosed resulting from the prolonged use of illegal drugs. These females were associated with a city

councilman who was ultimately prosecuted and sentenced to a period of incarceration for his own illegal activity.

David Gibson was an associate of said councilman. When authorities began receiving calls from concerned friends and family members of said females, Gibson's name was mentioned as being a known associate. The investigation began and authorities obtained a search warrant for Gibson's home to include the surrounding property. The Federal Bureau of Investigation, Drug Enforcement Administration, Meriwether County Sheriff's Office, and Thomaston Police Department executed the search warrant on November 17, 2022, looking specifically for evidence of murder victims, sex trafficking, and drug trafficking.

No such evidence was found. Instead, law enforcement located a small amount of marijuana and firearms belonging to Gibson, his wife, and his deceased father-in-law. Gibson was arrested for the charge to that subject of this appeal, possession of a firearm by a prohibited person.

### ii.    The Superseding Indictment for Charges of Possession of a Firearm by an Unlawful Drug User

On or about December 16, 2022, a grand jury returned an indictment for one count of possession of a firearm by a prohibited person. On or about January 21, 2023, Gibson retained undersigned counsel. On or about February 15, 2023, a grand jury returned a superseding indictment containing the same single-count

6

with the addition of listing every firearm located within Gibson's home at the time of the arrest.

### iii.    The Presentence Investigation Report

A presentence report was filed on or about August 21, 2023. Defendant objected only to the extent he preserved his right to appeal.

### iv.    Gibson's Sentencing Memorandum With Requests for Variance

Gibson filed a Sentencing Memorandum on or about September 1, 2023. [Doc 76]. The purpose of the Sentencing Memorandum was to highlight Gibson's use of illegal substances was never done in conjunction with his possession of firearms. The District Court's interpretation of the statute at the time of the jury trial was different than its interpretation at the time of the plea and sentencing. *See* T2, pp. 8-11; T3, pp. 16-21, T4, pp. 9-17.

## ARGUMENT AND CITATIONS OF AUTHORITY

### A.    Interpretation of 18 U.S.C. § 922(g)(3)

The mere definition of "unlawful drug user" in § 922(g)(3) is vague in plain text. In the instant case, the Court struggled with the definition as did the Government when explaining which fact(s) it intended to use in order to prove that Gibson was, in fact, an unlawful drug user under the statute. Did the Government only need prove that Gibson was in possession of an illegal substance at one point (prior traffic stop and arrest for possession of a controlled substance) and an owner

7

of firearms? Did the Government only need prove that Gibson at one point overdosed on an illegal substance (Narcan testimony offered by EMS worker) and possessed firearms when he returned to his residence at some later date? Or did the Government need only prove that Gibson consumed any illegal substance on any occasion (testimony of confidential informants) while maintaining hunting rifles at his home?

Furthermore, did the Government need prove that Gibson had actual knowledge or was on notice that he was a person prohibited from possessing firearms in his home when he partook in the consumption of a controlled substance outside of his home?

It was made clear by the Government's offering of any number of ways to "prove" the essential elements of § 922(g)(3) that it, too, was unclear as to what is actually required by law to secure a lawful conviction.

The court in *United States v Morales-Lopez* explored the vagueness of 18 U.S.C. § 922(g)(3).

The Fifth Circuit Court of Appeals also issued an opinion on § 922(g)(3) in *United States v. Daniels*, 22-60596 (Aug 9, 2023). Said Court reversed the conviction and dismissed the indictment based on the vagueness of the subject statute as it applied to Daniels.

8

The legal contours of "unlawful user" of a controlled substance are not well-defined within the statute. *United States v. Purdy*, 264 F.3d 809, (9th Cir. 2001), determined whether a person can be thus characterized under § 922(g)(3). To convict someone under the statute, *Purdy* requires that the government prove "that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm." *Purdy*, 264 F.3d at 813. *See also United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002) (upholding § 922(g)(3) conviction where defendant admitted to using marijuana from childhood until two months before the offense); *United States v. Edwards*, 38 F. App'x 134, 138 (4th Cir. 2002) (unpublished) (stating that the drug use must be consistent, prolonged, and close in time to gun possession); *United States v. Sperling*, 400 F. App'x 765, 767 n.3 (4th Cir. 2010) (unpublished) (noting the Ninth Circuit's "persuasive" decision in *Purdy*).

This Court in 2003 tackled the meaning of "unlawful user," citing its decision in *Bernardine*:

> In *Bernardine*, we held that to be an "unlawful user of" marijuana a defendant's use must be "ongoing and contemporaneous with the commission of the offense." *Bernardine*, 73 F.3d at 1082. The Tenth Circuit has similarly interpreted "unlawful user" of a controlled substance to mean regular and ongoing use of a controlled substance during the same time period as the firearm possession. *See United States v. Bennett*, 329 F.3d 769, 778 (10th Cir. 2003). The Tenth Circuit further explained:

9

> Although a defendant's drug use must be contemporaneous with firearm possession, there is no need for a defendant's drug use to be "simultaneous[]" with firearm possession. The government does not need to show the defendant was under the influence of an illegal drug at the exact same time he possessed a firearm.

*Id.* at 777 n. 4 (citations omitted).

*United States v. Edmonds*, 348 F.3d 950 (11th Cir. 2003); citing *United States v. Bernardine*, 73 F.3d 1078 (11th Cir. 1996).

The Tenth Circuit as cited above held that the drug use must be *contemporaneous* with firearm possession, but not *simultaneous*. However, simultaneous is a synonym for contemporaneous. Should the Government need to show that the defendant was under the influence – which is, by plain language, different than using a drug – at the exact same time he possessed a firearm, the previous sentence containing the word "contemporaneous" is in direct contradiction.

**B.**    **In *New York State Rifle & Pistol Ass'n, Inc. V. Bruen*, __U.S.__, 142 S.Ct. 2111 (2022), The Supreme Court Established A Test For Whether A Law Violates The Second Amendment: If The Text Of The Amendment Covers The Proscribed Conduct, The Government Must Show It Is Consistent With Distinctly Similar Laws Or Regulations That Were Commonplace Around The Time The Second Amendment Was Adopted. Under This Framework, 18 U.S.C. § 922(G)(3) Is Facially Unconstitutional And Gibson's Conviction Cannot Stand.**

The Second Amendment reads "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall

not be infringed." U.S. CONST., 2D AMEND. Congress permanently barred unlawful drug users from possessing firearms in 18 U.S.C. § 922(g)(3). This contravenes the plain text of the Second Amendment and is inconsistent with the founding-era tradition of firearms regulations.

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, __U.S.__, 142 S.Ct. 2111 (2022), the United States Supreme Court established the proper analysis of claims that a law violates the Second Amendment. First, a court must consider whether the law proscribes conduct that the plain text of the Second Amendment protects. *Id.* at 2126. If the answer is yes, the law is presumptively unconstitutional, and the government bears the burden of demonstrating that the law is consistent with the tradition of firearms regulations around the time the Second Amendment was ratified. *Id.*

### i.   The Plain Text of the Second Amendment Covers the Possession of Firearms By Drug Users.

**"The People."** A plain reading of the constitutional phrase "the people" does not purport to exclude drug users. Founding-era dictionaries defined "people" to encompass the entire political community. *See* Thomas Dyche & William Pardon, A NEW GENERAL ENGLISH DICTIONARY (14th ed. 1771) ("signifies every person, or the whole collection of inhabitants in a nation or kingdom."); Noah Webster, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828) ("the body of persons who compose a community, town, city or nation.")

11

In *District of Columbia v. Heller*, 554 U.S. 570, 580-81 (2008), the Supreme Court entertained a "strong presumption" that this text refers "to all members of the political community, not an unspecified subset[,]" which is the "unambiguous[]" meaning of the term in "all six other provisions of the Constitution that mention 'the people[.]'" The Court noted that the Constitution uses "right of the people" in three places – the First Amendment's assembly and petition clause, the Fourth Amendment's search and seizure clause, and the Second Amendment. *Id.* at 579. It concluded "the people" means the same thing in all three places – the plain meaning of that term at the time it was adopted. *Id.* To hold that the Second Amendment excludes convicted felons would thus lead to the absurd conclusion that the First Amendment and Fourth Amendment also exclude felons. *Id.* at 581.

This Court and others agree. In a different context, this Court stated felons are "indisputably part of 'the people.'" *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022) (finding bar on unlawful immigrants possessing firearms does not violate Second Amendment because consistent with history and traditions); *cf. United States v. Meza-Rodriguez*, 798 F.3d 664, 672 (7th Cir. 2015) ("we see no principled way to carve out the Second Amendment and say that the unauthorized (or maybe all noncitizens) are excluded.")

12

Although the *Bruen* court often referred to "law-abiding" citizens in its reasoning, this qualification was based on the facts at bar. *See, e.g., Bruen*, 142 S.Ct. at 2134. It did not purport to exclude non-law-abiding citizens from "the people."

**"To Keep and Bear."** *Bruen*, 142 S.Ct. at 2134, clarified that "to keep and bear" arms includes carrying a firearm outside of the home. *Heller*, 554 U.S. at 635, confirmed it covered carrying firearms inside the home. Gibson's firearms were all within the confines of his residence, many contained within a gun safe.

**"Arms."** "Arms" include "weapons of offense or armour of defense." *Heller*, 554 U.S. at 581. In particular, they include pistols, which existed when the Second Amendment passed. *Id.* at 629.

As we look to history, we can also pause to look at the history of the use of this statute. The District Court noted several times throughout this case that this was a case of first impression in his twenty-two years on the bench. [T4, p 10]. Should this statute criminalize the possession of a firearm within hours or days or weeks of using a controlled substance, the Government would have surely tried and convicted thousands of citizens over the course of two decades. The question presents itself, why has this statute not been utilized by the Government?

ii.   ***Bruen* Abrogated *United States v. Rozier*, 598 F.3d 769, 770-71 (11th Cir. 2010).**

The Eleventh Circuit has thus far rejected arguments that § 922(g) violates the Second Amendment. *See United States v. Rozier*, 598 F.3d 769, 770-71 (11th Cir. 2010); *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1324 (11th Cir. 2015); *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017). But it did so before the Supreme Court decided *Bruen*, and based on an analysis that is irreconcilable with *Bruen*.

Generally, a Circuit decision is "binding . . . unless and until it is overruled or undermined to the point of abrogation by the Supreme Court . . . ." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). But "where the Supreme Court has clearly set forth a new standard to evaluate" a legal issue, prior Circuit precedent addressing that issue "has been undermined to the point of abrogation and [this Court] is bound to follow th[e] new rule of law." *Id.*

Prior to *Bruen*, the Supreme Court "ha[d] not definitively resolved the standard for evaluating Second Amendment claims." *Silvester v. Becerra*, _U.S._, 138 S.Ct. 945, 947 (2018) (Thomas, J., dissenting from denial of certiorari). The courts of appeal "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen*, 142 S.Ct. at 2125. Step one asked whether the Second Amendment covered the conduct based on its historical meaning. *Id.* at 2126. At step two, courts applied different levels of scrutiny based on " 'the severity of the law's burden on that

14

right.' " *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (CA7 2019)). The Supreme Court explicitly cited *Georgia-Carry.org*, 788 F.3d 1244, 1260 n.34 (CA11 2012), as an example of a decision that prescribed this second step. *Bruen*, 142 S.Ct. at 2127, n.4. It then rejected the second step as "one step too many." *Id* at 2127.

*Bruen*, 142 S.Ct. 2111, explicitly set forth a new text-and-history standard for evaluating Second Amendment claims that *Rozier*, 598 F.3d 768, did not apply. This Court neither determined whether felons were part of "the people," nor analyzed the founding-era record of firearm regulations as it relates to barring felons from possessing them. Instead, it determined that "Rozier's Second Amendment right to bear arms is not weighed in the same manner as that of a law-abiding citizen[,]" pointed to the dicta in *Heller*, and found § 922(g)(1) constitutional. *Rozier*, 598 F.3d at 771. This bears little resemblance to the *Bruen* methodology. *Bruen* thus abrogated *Rozier*.

To be sure, *Bruen* did not involve § 922(g)(3). But again, a Supreme Court decision need not be directly on point to abrogate a lower court decision. Hence, in *Archer*, 531 F.3d at 1352, this Court found that *Begay v. United States*, 553 U.S. 137 (2008) had abrogated *United States v. Gilbert*, 138 F.3d 1371 (1998) by changing the standard for determining whether a predicate qualified as a U.S.S.G. §4B1.2 crime of violence under the now repealed residual clause. Based on *Begay*, *Archer* found that carrying a concealed firearm was not a crime of violence, even

15

though *Gilbert* had previously held the opposite and *Begay* involved a DUI predicate. *Archer*, 531 F.3d at 1352. Likewise, *Bruen* dictates the mode of analysis here, and not *Rozier*, even though *Bruen* did not involve § 922(g)(3).

### iii.    Gibson Did Not Waive His Second Amendment Claim By Pleading Guilty to Violating 18 U.S.C. § 922(g)(3).

In *Class v. United States*, __U.S.__, 138 S.Ct. 798, 802 (2018), the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(1), which bars individuals from carrying firearms on the grounds of the Capitol building. He pleaded guilty, and signed a plea agreement that specifically waived "several categories of rights," such as "all defenses based on the statute of limitations[]" and "the right to appeal a sentence at or below the judicially determined, maximum sentencing guideline range[.]" *Id*. After his guilty plea, he challenged the constitutionality of the statute on direct appeal, arguing, *inter alia*, that it violated the Second Amendment. *Id*. The district court and court of appeals each held his guilty plea waived the claim. *Id*. at 802-03. The Supreme Court reversed, holding that "a guilty plea by itself" does not "bar[] a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal." *Id*. at 803.

It reasoned that such a challenge neither "contradict[s] the 'admissions necessarily made upon entry of a voluntary plea of guilty[,]' " *Id*. at 804, nor "focus[es] upon case-related constitutional defects that ' 'occurred prior to the

16

entry of the guilty plea[]' ' " and might " 'have been 'cured' " *Id.* at 805 (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974) (citation omitted.)) Rather, it "challenge[s] the Government's power to criminalize [his] (admitted) conduct." *Id.* at 805. Moreover, unlike the types of rights generally waived by a guilty plea, Class's constitutional challenge of the statute implicated " 'privileges which exist beyond the confines of the trial.' " *Id.* at 805 (quoting *Mitchell v. United States*, 526 U.S. 314, 324 (1999)); *see also Blackledge*, 417 U.S. at 30 (excepting from general rule that guilty plea waives antecedent claims, those claims that implicate "the very power of the State" to prosecute the defendant); *Menna v. New York*, 423 U.S. 61, 63 (1975) (guilty plea did not waive Double Jeopardy claim, which argues "the charge is one which the State may not constitutionally prosecute.").

Hence, because the Second Amendment encompasses Gibson's charged conduct, the government cannot show that § 922(g)(3) is consistent with the founding-era tradition of firearms regulations, and Gibson did not waive his right to raise this claim on direct appeal, this Court should reverse.

### C. Rule 11 Colloquy Pertaining to the Factual Basis for the Guilty Plea

One of the core objectives of Rule 11 is to ensure that the defendant understands the nature of the charge to which he is pleading guilty. Whether a Rule 11 colloquy serves this objective depends on the complexity of the charge and the

17

intelligence and sophistication of the defendant, among other factors. *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018).

It is clear from the change of plea transcript that Gibson did not understand the charge against him. Gibson did admit that he was the owner and possessed firearms in his home. However, Gibson nor counsel fully understood the statute as charged. As noted above, the Court's interpretation of the statute differed between the trial and the plea colloquy and the elements were not clearly explained. A crucial element of "drug user" was not explained during the plea colloquy nor was the crucial element of "possession" in conjunction with being a drug user.

The reason that Rule 11 requires a factual basis before entering a judgment of guilt is to ensure that a factually innocent defendant does not mistakenly plead guilty. *United States v. Lopez*, 907 F.2d 1096, 1100 (11th Cir. 1990). Here, neither the District Court, nor this Court, can be sure that Gibson was guilty, based on the vagueness of the statute and the interpretation of same by both the Government and the Court.

A guilty plea is constitutionally involuntary when the defendant does not understand a critical element of the offense to which he is admitting guilt. "Drug user" is a critical element of § 922(g)(3). Gibson's guilty plea was constitutionally involuntary in the same way that it offended Rule 11. It also satisfied the plain error standard, in the same way.

18

Moreover, this type of due process violation is a structural error. *Boykin v. Alabama*, 395 U.S. 238, 239, 244 (1969) established that a guilty plea accepted without any record indicating the plea was automatically reversible. *Henderson v. Morgan*, 427 U.S. 637 (1976) shows that even when the record is only silent as to a critical element - there, the intent-to-kill element of second-degree murder - the guilty plea should be set aside. *United States v. Dominguez Benitez*, 542 U.S. 74, 84 n.10 (2004) reaffirmed that a constitutionally involuntary guilty plea cannot be saved even if the evidence is overwhelming that the defendant would have pleaded guilty absent the error. Thus, the normal prejudice analysis required by the plain error standard does not apply.

The Supreme Court has on several occasions found that an error was structural because it infringed on the defendant's right to make certain autonomous decisions for himself. *See McKaskle v. Wiggins*, 465 U.S. 168, 177, n.8 (1984); *McCoy v. Louisiana*, __U.S.__, 138 S.Ct. 1500, 1508 (2018). The error here violated Gibson's right to autonomy, because he could not decide for himself whether to contest the drug user element, or negotiate a knowing admission to the element.

The procedures required by Rule 11 "are designed to address the three 'core objectives' necessary for a knowing and voluntary guilty plea[,]" one of which is "that [the defendant] understands the nature of the charges[.]" *United States v.*

19

*Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018). To this end, "what constitutes an adequate plea colloquy varies from case to case depending on the complexity of the charges and the defendant's intelligence and sophistication." *Id*. Reading the indictment and soliciting questions from the defendant might suffice "in simple cases." *Id*. As well, "a factual proffer may set forth in such detail the facts of the crime that it effectively incorporates the substance of the elements of the offense." *Id*. Yet more is required "in more complex cases, such as those involving 'esoteric terms or concepts unfamiliar to the lay mind.' " *Id*. at 1239 (quoting *United States v. James*, 210 F.3d 1342, 1345 (11th Cir. 2000)).

Here, no one during the Rule 11 hearing adequately explained the "unlawful drug user" element to Gibson. Nor did was a significant nexus explained between the crucial elements of "unlawful drug user" and "possession of a firearm."

## D.    Due Process Violation

A guilty plea is not voluntary in a constitutional sense "unless the defendant received 'real notice of the true nature of the charge against him.'" *Henderson v. Morgan*, 427 U.S. 637, 645 n.13 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "The defendant receives 'real notice' of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements. This is so because a guilty plea represents, in essence, an admission as to each and every element of the offense." *Gaddy v. Linahan*, 780 F.2d 935, 943

20

(11th Cir. 1986). Due process, "[a]t the very least, ... requires that the defendant, prior to tendering a plea of guilty, receive a description of the 'critical elements' of the charged offense[.]" *Id.* at 945.

"Unlawful drug user" is a critical element of § 922(g)(3). Gibson could not voluntarily plead guilty or knowingly stipulate to the "unlawful drug user" element, without first receiving an adequate explanation of the element. In many respects, the constitutional error mirrors the Rule 11 error. The constitutional error satisfies the plain error standard in the exact way that the Rule 11 error does. But where a guilty plea is constitutionally involuntary based on the failure to notify a defendant of a critical element, the error is also structural.

When the Court asks of a defendant, do you understand the punishment range in your case? The punishment statute specifically reads:

> 18 U.S.C. § 924(a)(8) Whoever **knowingly** violates subsection (d) or (g) of section 922 shall be fined under this title, imprisoned for not more than 15 years, or both.

A knowledge element is imputed into this argument which is essential for the defendant to understand before his plea can be accepted. Did Gibson **know** he was a person prohibited from possessing a firearm?

In *Boykin v. Alabama*, 395 U.S. 238, 239, 244 (1969), the Court reversed where the record surrounding the guilty plea was completely silent as to the nature of Mr. Boykin's robbery charges or the rights he was waiving by pleading guilty. It

21

refused to "presume" the defendant waived his rights "from a silent record." *Id.* at 243.

The *Boykin* rule is not limited to completely silent records surrounding a guilty plea. In *Henderson*, 426 U.S. at 639, the issue was "whether a defendant may enter a voluntary plea of guilty to a charge of second-degree murder without being informed that intent to cause the death of his victim was an element of the offense." In light of an indictment read in open court that alleged Henderson had "willfully" stabbed his victim, the Government argued his claim went to the "technical" elements, but not to the substance of the charge. *Id.* at 642, 644. The Court did not agree that his misunderstanding of the intent to kill element was a technicality. *Id.* at 644.

It found that, even assuming that "the prosecutor had overwhelming evidence of guilt" and that counsel's advice to plead guilty was "wis[e]," this would not have made the guilty plea any more voluntary. *Id.* at 644-645. Although the intent to kill "would almost inevitably have been inferred from the evidence that respondent repeatedly stabbed Mrs. Francisco, it is nevertheless also true that a jury would not have been required to draw that inference." *Id.* at 645-646. His admission to killing her did "not necessarily also admit" that he had intended to do so. *Id.* at 646. Hence, "[t]here [wa]s nothing in th[e] record that c[ould] serve as a

22

substitute for either a finding after trial, or a voluntary admission, that respondent had the requisite intent." *Id.*

*Henderson*, 426 U.S. 637, did not involve a complete absence of any record suggesting the guilty plea was knowing and voluntary in some respects. Rather "[i]n direct colloquy with the trial judge respondent stated that his plea was based on the advice of his attorneys, that he understood he was accused of killing Mrs. Francisco in Fulton County, that he was waiving his right to a jury trial, and that he would be sent to prison." *Id.* at 642. The problem was that there was "no reference of any kind to the requirement of intent to cause the death of the victim." *Id.* at 643. And this problem alone was sufficient to affirm the District Court's setting aside of the guilty plea. *Id.* at 640.

Likewise, here, the (unknown) weight of the evidence could not remedy the constitutional violation or save the guilty plea. The Supreme Court reaffirmed in *United States v. Dominguez Benitez*, 542 U.S. 74, 84 n.10 (2004), that a conviction based on a constitutionally involuntary guilty plea "must be reversed[,]" despite "overwhelming evidence that the defendant would have pleaded guilty regardless." *See also United States v. Jones*, 266 F. App'x 901, 902 (11th Cir. Feb. 26, 2008) (recognizing that involuntary guilty pleas, unlike Rule 11 violations, are reversible notwithstanding "overwhelming evidence of guilt," or probability that defendant would have entered guilty plea absent error).

23

Thus, even if the evidence was overwhelming that Gibson was a drug addict or user of drugs and that he at some point possessed firearms, Gibson did not voluntarily admit to these elements in pleading guilty. Nothing could make his guilty plea knowing and voluntary outside of his actual understanding of what he was admitted to when he entered his plea. Without that understanding, his conviction should be set aside.

In other words, the error in accepting an unknowing guilty plea was structural. "The purpose of the structural error doctrine is to ensure insistence on certain basic constitutional guarantees that should define the framework of any criminal trial." *Weaver v. Massachusetts*, __U.S.__, 137 S.Ct. 1899, 1907 (2017). In *Weaver*, the Court found three categories of structural errors: (1) "when the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest []"; (2) when "the effects of the error are simply too hard to measure[]"; and (3) when "the error always results in a fundamental unfairness." A guilty plea without knowledge of an essential element admitted implicates at least the first and third *Weaver* categories: it offends a transcendent interest that has nothing to do with preventing erroneous convictions: the defendant's right to make certain decisions for himself. And it "always results in fundamental unfairness." *Id*. at 1908.

24

The Supreme Court has found several errors were structural because they deprived the defendant of his right to make certain autonomous decisions. In *McKaskle v. Wiggins*, 465 U.S. 168, 177, n.8 (1984), the Court found the right to self-representation was structural, even though its exercise "usually increases the likelihood of a trial outcome unfavorable" to him. It stressed "[t]he right to appear *pro se* exists to affirm the dignity and autonomy of the accused." *Id.* at 176-77. And in *McCoy v. Louisiana*, __U.S.__, 138 S.Ct. 1500, 1508 (2018), the Court held that a lawyer's strategic concession of guilt, over the objection of the defendant, was a structural error that violated the defendant's right to make that decision for himself. It described decisions "reserved for the client" to include "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *Id.* at 1508 (2018). These are matters over which the defendant has the final say, even against the advice of counsel, "however counterproductive that course may be, ...." *Id.* at 1507 (citation omitted); *see also Weaver*, 137 S.Ct. at 1908 *(noting "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty.")*; *cf. United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) (denial of counsel of choice is structural error); *Roe v. Flores-Ortega*, 428 U.S. 470 (2000) (failure to file notice of appeal upon specific request of client is *per se* deficient, regardless of appeal's merits).

25

Ensuring that these decisions belong to the defendant affirms the "respect for the individual which is the lifeblood of the law." *Faretta v. California*, 422 U.S. 806, 834 (1975) (quoting *Illinois v. Allen*, 397 U.S. 337, 350-351 (1970)). Hence, when it comes to certain fundamental decisions, the interest in autonomy outweighs the interests in efficiency, in avoiding erroneous convictions, and even in what some may consider the defendant's best interest.

Gibson was not permitted to decide whether to contest the drug user element. He was not given the opportunity to investigate the government's evidence of it, or to put the government to its burden of proving it beyond a reasonable doubt. He was not able to negotiate his knowing waiver of the government's burden, or allowed the dignity and autonomy to voluntarily admit the element. In short, without understanding the drug user element, he was not able to knowingly "make his own choices about the proper way to protect his own liberty." *Weaver*, 137 S. Ct. at 1908.

Not only did the error here implicate an interest independent of avoiding erroneous convictions, the violation of a defendant's autonomy in this way will always be fundamentally unfair. The implications of this error are even more problematic than those errors that the *Weaver* Court considered to be "always ... fundamentally unfair[]": the denial of the right to counsel, and the giving of an erroneous reasonable doubt instruction. 137 S.Ct. at 1098 (citing *Gideon v.*

*Wainwright*, 372 U.S. 335, 343-345 (1963) and *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)). At least defendants without counsel, or defendants burdened by a misleading reasonable doubt instruction, still retain the basic decision of whether to admit or contest an essential element. It will always be fundamentally unfair to tell a defendant that, by his guilty plea, he is stipulating to one thing, only for him to find out later that his guilty plea represented a stipulation to something additional.

**E.    Gibson's Plea Was Involuntary as the *Rehaif* Elements Were Not Explained by the Court Nor Counsel**

This case raises a host of issues pertaining to the impact of *Rehaif v. United States*, ___ U.S. ___, 139 S.Ct. 2191 (2019). First, what is the exact *mens rea* required by *Rehaif*? Is it knowledge that the defendant qualifies for the status under 18 U.S.C. § 922(g)(3), meaning knowledge of what it means to be an unlawful user of a controlled substance as defined by 21 U.S.C. § 802 in possession of a firearm? Or is it knowledge that this status triggers a ban on possessing firearms? Or both?

Gibson's guilty plea violated due process because it was involuntary. It was involuntary because he did not know at the time he entered his plea an essential element to which his plea stipulated. *Bousley v. United States*, 523 U.S. 614 (1998). *Rehaif v. United States*, ___ U.S. ___ 139 S.Ct. 2191 (2019), clarified that a defendant's knowledge of his unlawful status is an element of 18 U.S.C. §§ 924(a)(2) and 922(g)(1). As applied to Gibson, his plea colloquy, the words of his

27

indictment, and the words of the statute, did not notify him that the government had to prove that he knew. This is evidenced by the amount of discussion between the Court and the parties throughout this case, memorialized in the proceeding transcripts.

An involuntary guilty plea is *per se* reversible under *Boykin v. Alabama*, 395 U.S. 238 (1969), and *Henderson v. Morgan*, 428 U.S. 637 (1976). The required showing of prejudice articulated in *United States v. Dominguez Benitez*, 542 U.S. 74, 84 & n.10 (2004), does not apply to constitutionally involuntary guilty pleas. Furthermore, the error is structural because it violates not only the fundamental rights waived, but the defendant's overarching right to autonomy, in deciding whether to plead guilty or go to trial -- not unlike the right to self-representation found to be structural in *McKaskle v. Wiggins*, 465 U.S. 166, 177 n.8 (1984). These interests are independent of the interest at issue in a prejudice analysis -- avoiding erroneous convictions. Moreover, attributing to a guilty plea a stipulation to an element about which the defendant was unaware will always be fundamentally unfair. *Weaver v. Massachusetts*, ___ U.S. ___, 137 S.Ct. 1899, 1906-1907 (2017). Even if it was not structural, the error caused prejudice. Gibson was unable to investigate the government's evidence of the *Rehaif* element, to negotiate his agreement to stipulate to that element, or to put the element to the jury.

28

The error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993). Convicting based on an unknowing admission to the element that separates lawful from unlawful firearm possession would universally be perceived as unfair. Although the element is newly recognized, this Court may not limit its discretion to correct the error to circumstances that shock the conscience or to miscarriages of justice. *Rosales-Mireles v. United States*, ___ U.S. ___, 138 S.Ct. 1897 (2018).

As reflected in the proceeding transcripts, Gibson argues that his plea could not have been made knowingly and voluntarily without knowledge of the elements as charged. If the Court, the Government, and Defense Counsel did not understand § 922(g)(3), it is unreasonable to impute understanding onto Gibson.

## SUMMARY OF ARGUMENT

Appellate attorneys across the United States have briefed these issues with differing results. As the trial attorney for this case, these arguments carry emotions of confusion and frustration that a reading of the relevant transcripts may not convey.

A reading of 18 U.S.C. § 922(g)(3):

> It shall be unlawful for any person who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)) to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or

29

ammunition which as been shipped or transported in interstate or foreign commerce.

The superseding indictment in the Gibson case reads:

> On or about November 17, 2022, in the Columbus Division of the Middle District of Georgia, the defendant, David Gibson, knowing he was an unlawful user of a controlled substance as defined in 21 U.S.C. § 802, did knowingly possess a firearm...[firearms listed]...; in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(2).

Throughout this case, the interpretation of this statute remained vague to all parties involved. The defense argued against presentation of evidence supporting mere possession of methamphetamine while the court and government sided with the presumption that mere possession indicates use, a critical element of the statute. [Doc T2, p 42; Doc T3, p 7]. I direct attention to a discussion prior to the jurors entering the courtroom in which the distinction was attempting to be made by defense counsel between a drug deal, possessor of drugs, and a drug user. [Doc T3, p 8]. The Court admitted this statute is "new ground" and the distinction was never made clear to the Defendant as to what conduct was in direct violation of the statute as charged.

The final statement made by the Court that morning appears on page 8 of the transcript labeled "Change of Plea," although the statement was made prior to the jury entering the courtroom to begin opening statements. At that time, the Court stated:

30

My understanding is Defense Counsel's position is that any evidence that does not relate to his actual possession of drugs while he's possessing a firearm should be excluded and you have moved in limine to exclude that. And I have denied that motion in limine. So you've preserved it for appeal if that becomes necessary. Let me just make sure I understand the Government's position with regard to this statute. Is it the Government's position that you have the burden of proving that he was in possession of a firearm while he was actually using an illegal drug? Do you agree with that?

The Government replied, "Yes."

The court responded:

He would not be guilty of violating this statute if he simply possessed an illegal drug and was not using it. Does the government agree with that?

The Government replied, "Yes, he has to be a user of drugs."

The Court, "At the time he possessed the firearm?"

At this point, Defense Counsel believes the statute is clear and we are ready to proceed to a jury trial. Unfortunately, the discussion continued and the interpretation of the statute and the required elements once again became vague.

Government, "Correct, but a reasonable time covering the time period he covered that he possessed a firearm."

The Court:

What is the Government's position if – I guess that's the question or what it means by user. For example, if he's a regular user and yet he doesn't possess a firearm – you don't have evidence that he possessed a firearm when he

31

was regularly taking the pill, or shooting up, or the smoking marijuana. If you don't have evidence of that, but you have evidence that he did that day before and then the next day possessed a firearm; is the Government's position that the jury would still have to find that on the next day he was actually taking the pill, smoking the joint, shooting up and they could use that other evidence from the day before as evidence of that. Or is it your evidence that they would just have to find generally he's a regular user of drugs?

Government's response:

Generally, he is a regular user of drugs. There is a temporal nexus to where it would have to be that he was using drugs at the exact precise time that he possessed—

The discussion continues and the Court makes a ruling:

It's my ruling that he can be guilty of this offense even if he was not actually shooting up, smoking the illegal drug, or taking the illegal pill, or snorting the illegal drug at the exact time he possessed the firearm. That he could be an unlawful user even if he was doing so in close proximity to the possession of the guns…That's my ruling. The Defendant's Counsel objects to that and think that I's error and that will be preserved for appeal.

T3, p 11.

At that time, Defense Counsel requested a break to discuss this ruling with Gibson.

This discussion included several terms that are not located within the statute, such as "known" and "regular" in context of being an unlawful user. The confusion as to the "temporal nexus" of unlawfully using a drug and "constructively" possession a firearm.

32

The sentencing hearing on September 6, 2023, led to even more confusion. Directing attention to pages 10-12, the Court, in part, expressed concerns over the conflicting opinion of the parties. The Defense takes the position that is it not a violation of the statute to own firearms as an unlawful user of drugs; that it is not a violation of the statute to possess firearms separately from being an unlawful user of drugs. The Government takes the position that a "regular" user of drugs cannot own or possess firearms, "if he had the knowledge of firearms and the apparent authority to exercise control and dominion over those firearms." The Government's position is that the statute is "not limited to that very narrow circumstances of actually seeing someone holding a gun and smoking a pipe at the same time."

The Court then questions the Government about Hunter Biden and possible disparate treatment. With concern, the Court circles back around on page 14 to a person, like Gibson, who owns antique and hunting rifles and occasionally smokes a joint or two. (In this case, Gibson's home was searched and only a small amount of marijuana was found. No evidence of methamphetamine use or drug dealing was found.) The Government again replies that in order to violate the statute, the person must have within their possession firearms and be a "regular" user of drugs.

Without clarity on the specific language of § 922(g)(3), this writer still looks to 21 U.S.C. § 802 as defining a controlled substance.

33

> (6) The term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986.

A plain reading of § 922(g)(3) along with § 802 would not criminalize the citizen who has at least one firearm in his home while taking, as prescribed, Vicodin, Adderall, Tylenol with codeine, or Xanax. By the Government's position in Gibson, this citizen would be considered a "regular" user of a substance as defined by the statute. The question then becomes, what shifts a citizen from a regular user of a controlled substance in possession of a firearm to an "unlawful" user as actually described by the statute?

It is not lost on this writer that the majority of her violent, domestic and self-injury/suicide cases involving firearms also involve, not a listed controlled substance, but alcohol which is specifically excluded from § 802.

It is the position of this writer that the legislative intent was to protect citizens from themselves and each other by criminalizing the actual, unlawful use of a dangerous drug while actually possessing a firearm as this scenario is where the actual danger exists.

With regard to alcohol, the Georgia *per se* legal limit for operating a passenger vehicle is .08 grams. However, a level of .09 grams cannot be the standard for excessive or unlawful use as Georgia also has the *less safe* standard to

34

include any amount of alcohol being present in the body under the subjective opinion of the arresting officer. While any amount of drug, prescription or illegal, in the blood satisfies the crime of driving while under the influence of drugs. O.C.G.A. § 40-6-391.

In order to arrive in a constitutionally valid space such as this, the Court need determine that the Second Amendment does not protect the:

- unlawful – which need be clearly, unequivocally defined

- user – to mean one-time, regular basis, or addict

- of a controlled substance – which need be narrowly tailored

- from possessing – which need be distinguished between actual, knowing possession and constructive possession

- to include "simultaneously"

- a firearm – clear intent to include or exclude ammunition.

While it is the role of a defense attorney to argue the construction of a statute to best suit her client's set of circumstances, this particular statute does not seem to lend itself to either side. In the case of Gibson, the confusion over the statute and discussions that followed suit left the defendant bewildered. Looking to counsel wondering what crime he admitted that he committed and when it was committed.

The harm sought to be protected against should be apparent when constructing a statute, then narrowly tailored and concise.

35

## CONCLUSION

For the above and foregoing reasons, Appellant DAVID GIBSON

respectfully requests that this Court determine that his plea was involuntary and 18

U.S.C. § 922(g)(3) is unconstitutional, thereby dismissing this case.

This 1st day of February, 2024.

Post Office Box 1275
Columbus, Georgia 31902
706.257.1592
jennifer@jacurrylaw.com

s/ Jennifer A Curry
Jennifer A. Curry
Attorney for Appellant
Georgia Bar No. 127101
Alabama Bar ID. 0643C92W

36

# CERTIFICATE OF COMPLIANCE

I certify that this Brief complies with the type-volume limitation set forth in Federal Rules of Appellate Procedure 32(a)(7)(B). This Appellate Brief contains 9,816 words.

I have relied on my word processor, Microsoft 365, to obtain the count.

I certify that the information on this Certificate is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

This 1st day of February, 2024.

Post Office Box 1275
Columbus, Georgia 31902
706.257.1592
jennifer@jacurrylaw.com

s/ Jennifer A Curry
Jennifer A. Curry
Attorney for Appellant
Georgia Bar No. 127101
Alabama Bar ID. 0643C92W

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have electronically filed the Appellant's Brief with the

Clerk of Court using the Eleventh Circuit's CM/ECF system which will send

notification of filing to all parties of record.

This 1st day of February, 2024.

Post Office Box 1275
Columbus, Georgia 31902
706.257.1592
jennifer@jacurrylaw.com

s/ Jennifer A Curry
Jennifer A. Curry
Attorney for Appellant
Georgia Bar No. 127101
Alabama Bar ID. 0643C92W

38